Attorney, Stephen Cookston. Just a moment for them. Alright, you may proceed. Good morning, your honors. I'm here at Police Court. I'm Stephen Cookston here for the appellants, Margie and Alan Barger. This case relates to a claim for damage to their roof that State Farm ultimately denied. We were the losers on a summary judgment motion decided by the district court, but we have taken the position the court was in error in awarding summary judgment because the trial court erroneously allocated the burden of proof to the jurors to establish that a named peril or a covered event under the policy caused their loss. We also take the position that the district court improperly removed from the jury's consideration the true reason that State Farm denied this claim. In other words, we believe there are competing theories on why this roof was leaking. The jury should have been able to decide which competing theory was the true reason for the leak. And we also believe that the jury should have been able to determine the true reason that State Farm denied this claim. Let me ask you, even since we're on a de novo review of summary judgment, even if we were to agree with your argument regarding the district court's error in terms of the policy application and the burden of proof, which you just referenced, you also reference competing theories of what happened to cause the loss. How do you get around not having an expert? I think the district court in the end also hung its hat on the absence of expert testimony on the plaintiff's side. Well, we believe that the answer to that question lies in part in the cases we cited that discussed the burden of proof on a policy such as this, an all-risk policy. This policy is broken down into two parts. It's coverage A, which covers damage to the dwelling, coverage B, that covers damage to personal property. And under coverage A, it covers very broadly accidental direct loss to the house. And our court, or the Mississippi Supreme Court in Corbin, the case we cited in our briefs, explained that the purpose of an all-risk policy is to ensure losses where the cause of loss is unknown or the specific risk is not explicitly contemplated by either party. Our burden under that standard is to provide proof that the loss occurred. I think this court even said it more to the point in the Morrison-Grain case and mind you that neither of these cases were cited or relied on by State Farm in its briefs or the district court. But Morrison-Grain, and I'll just quote this, noted that as has been recognized in other circuits, it would appear that all-risk insurance arose for the very purpose of protecting the insured in those cases where difficulties of logical explanation or some mystery surrounding loss or damage to property. The court continued that it would be inconsistent with the broad protective purposes of all-risk insurance to impose on the insured the burden of proving the precise cause of the loss or damage. So no, we do not have an expert to establish the cause of loss, but we feel like we have presented a covered claim as evidenced by the fact that a portion of the claim was paid. We believe that once we did that, the burden shifted to State Farm to prove that an exclusion applied. So we feel like under the broad language of the policy and the insuring provisions of Cover J, we believe that we have met the insuring agreement and met our burden under that standard. But you can even look to the expert that was designated by State Farm, Mr. Shaheed. We quoted it in our briefs, but he explained in great detail how a loss such as this could occur. Keep in mind, we're talking about a historic rain event that occurred in Greenwood, Mississippi. There were over nine inches of rain that occurred over a two-day period. Mr. Shaheed, their expert, explained that he would have expected there to be a leak under these circumstances. And he explained how a roof works and its intended purpose is obviously to keep water out of the house, but he explained that once certain building materials in the roof become saturated, it can be inundated by the water such as this and cause a leak. So we feel like their expert even agreed with us somewhat that the historic rain event itself was the cause of loss. And importantly on that point is there's no exclusion in the policy for a historic rain event. If State Farm had wanted to limit its risk to certain events, then it could have through an exclusion, but that was not done here. So we feel like, getting back to Your Honor's question, meeting our burden of establishing the cause of loss, we feel like we've met the standard of proving there's an insured loss and we place the burden back on them to prove an exclusion to the policy. And it's interesting on that point, I think State Farm argued in their brief that somewhat acknowledging our point and our reference to Morrison Grain and Corbin, State Farm argued in its brief that it has met the exclusion. We took that position as odd because the exclusion was not even argued in the district court. What was argued, and we quoted several pages from their summary judgment and their pleadings in our brief, what was argued is we had to prove and establish a cause of loss. The exclusion for faulty workmanship or design that they're now relying on was not part of the district court's decision. It was not part of their argument below. And it's important to look at the district court's actual holding and I'll quote it, and it goes back to Your Honor's point about the lack of an expert. It says here, and I'll quote the district court, because the bargers' lack of causation evidence means they failed to meet their burden of proving a covered event caused the additional damage, that was the basis for her summary judgment. There she's talking about our failure to prove a covered event. I think what the district court was referring to was coverage B of the policy which is exactly what she cited in her decision and coverage B, we talked about the all risk nature of coverage A and the burdens placed on the insured under there. Coverage B is the flip flop of that. Coverage B requires you to prove that a specified peril or a covered event caused the loss and that's exactly what the court looked at and relied on. It was argued by State Farm and it's no mystery why the court bet on that argument because that is all that was argued. So we believe that the fact that the district court and State Farm ignored the precedent given by Corbin and Morrison-Grain, that led to this first error in saddling us with a burden that didn't exist. We met our burden of proof. Our secondary argument gets back into the facts and shortly after this rain event occurred, State Farm performed an exterior inspection of the house decided that eight shingles were missing, decided that that amount of damage did not meet our deductible and that they weren't going to pay anything. At that point we got our insurance agent involved because there were seven locations in the house where there was leaking and the agent agreed that the problems that were exhibited were not due to eight shingles missing, it was larger than that. At that point, our insured was told that quote, roofs like this are going to leak. That's what he was told verbally by the claims adjuster that we were dealing with, but in or around the time that he was told that State Farm's claim manager over this file made an entry in the claims notes that said, and this is again, the agent at this point was trying to get a re-examination or re-inspection of the house. State Farm didn't want to do it and said that the photos we provided do not support that there are covered damages on the roof beyond what was identified. Then it says, please relay to the agent this roof has numerous facets, valleys, and flat areas. If the agent is having difficulty understanding why the roof is leaking, can we read with him that a roof of this type of design will often leak as it ages. So there we have a roof with numerous facets, valleys, and flat areas that they feel like would leak as it ages. Well, the fact remains that they insured this roof. We paid our premium for it, and there's no exclusion in the policy for roofs with numerous valleys, flat areas, or facets. But we believe that that was the true reason for this denial because that's the position they took with the insured and that's what was reported in the claims notes. They did subsequently write a letter that denied this claim based on unspecified design defects or workmanship defects, but it wasn't until six months after this lawsuit was filed that they had an expert come put meat on the bone and explain even what the defects they were claiming existed. And again, keep in mind this is six months after the lawsuit began before we had a factual predicate for their denial. And what that factual predicate was is they felt like that we didn't have two layers of 15-pound felt paper under those shingles to allow the water to shed. Well, our client who is an engineer, he went up there and looked himself and provided photographic evidence that there were in fact two areas of 15-pound felt on the roof, and at the time the gentleman, State Farms expert, made this conclusion he hadn't even seen the roof. So we feel like the jury should have been allowed to not only consider the competing alleged causes of this leak, whether it was this historic rain event versus a workmanship or design defect, but also the jury should have been allowed to determine whether State Farms' true reason for denying it is they didn't want to insure a roof like this. Because that's what they told us, and that's what they put in the claims notes. And one more point I wanted to make with my remaining time along those lines, State Farms cited and relied on the Sobley case for the proposition that they could raise an exclusion at any point in the context of this litigation and rely on it. That is what Sobley says in one sentence, but you have to read the next one that says, however, once coverage is established a court should evaluate whether there was an arguable basis for the denial based solely on the reason for denial of coverage given to an insured by the insurance company. So while they are raising their exclusion at this point, we feel like the Sobley decision, again, that they're citing and relying on, explains that the insurance company is limited to the reasons they gave us, which is the flat areas, facets, and valleys, which again is not an excluded peril under the policy. I have one quick question before you sit down. I understand the value of the roof is $16,023.79. Yes. What is your estimation of the value of this case? Is there something beyond the roof? Well, we have stated a claim for a bad faith denial of coverage. Do you have an estimate of the value of that claim? Well, that would be for the jury's determination as well. So you don't have an estimate? I don't have an estimate of what the jury would, but we've taken the position that we're also entitled to, at a minimum, for bringing this contract claim. Should we prevail, we're entitled to attorney's fees, which have been quite significant in this case. Thanks. Thank you, Your Honor. Ms. Morgan. May it please the Court, Rochelle Morgan, representing State Farm Fire and Casualty Company. If I may, first address a few points that my colleague made. First, State Farm did not deny this claim. State Farm paid the bargers for the accidental direct physical loss to their roof that resulted from a storm event that occurred in June of 2021. After State Farm made the determination that a few shingles, initially eight, later nine shingles were damaged or blown off from wind and a portion of the mod bit membrane roofing had been blown up and creased. After State Farm made that determination and actually made payment to the bargers for that claim, the bargers asserted an entitlement to have the entirety of their roof replaced. During the claim investigation, the bargers did not present any evidence to State Farm identifying any additional damage to the actual roof as a result of the storm or the rain or any other incident. Rather, the only evidence that was presented either during the claim investigation or during litigation was that the barger's roof leaked after the storm and it did not leak before the storm. During the litigation, State Farm retained an expert, an engineer who's also a registered roofing consultant. He has a lot of other fancy acronyms behind his name which are cited in our briefing. Mr. Shaheed. Mr. Shaheed initially was under the impression based on the discovery materials, as were we, that the barger's roof had been completely removed from their home and that there was nothing to inspect. That turned out to be incorrect. After the bargers submitted their fourth supplemental discovery responses, we learned that in fact the new roofing structure which was a completely redesigned roof system had been installed over the majority of the barger's old roof which allowed for Mr. Shaheed to go out and actually conduct an inspection of the roof. And this new roof structure was post this storm event? Yes, Your Honor. Yes, Your Honor. I believe around March of 2022 is when that roof structure was completed. That storm event was? In June of 2021. Did you raise a policy exclusion in your motion for summary judgment to the district court? We addressed that, Your Honor, by saying that the bargers could not prove that they were entitled to any additional coverage under the policy. We did not specifically cite the exclusionary language except in a footnote in our reply brief, I believe. But we did provide the court with the policy, the denial letters for the payment for the entirety of the roof. You know we have lots of cases that say you're not allowed to do that. Lots of cases that say you cannot sandbag the district court with an argument that you're going to raise to us for the first time. I believe, Your Honor, that the briefing in the district court and the district judge's opinion clearly shows that the district judge understood that argument. Let's talk about the district judge's understanding. So help me understand, because I'm a little unclear on your briefing. It seems like you want to defend the indefensible which is that the district judge's citing of policy B was in fact a correct understanding of coverage A. Can you at least assure me today that you concede that that was wrong and that in fact the all-perils discussion in A is the relevant discussion for us today? Yes, Your Honor. So that was a mistake? The district judge's quotation of the coverage B in sharing language was an error. We don't contest that. What our point is is that it doesn't matter because even under coverage A in sharing language, the bargers cannot prove an entitlement to anything additional under the policy. Your citation for the proposition that the bargers have to prove something for the all-perils coverage A is what? This is your burden, not theirs, right? Yes, Your Honor. Under the summary judgment standard we have to come forward with competent evidence to show that they're not entitled to anything else. We met that burden by showing that the only evidence in the record as to the extent of the loss to the roof itself was in the form of the nine shingles and the mod bit membrane roofing which State Farm paid. Additionally, we showed by competent undisputed evidence that the cause of the leaking to the interior of the home, which is not at issue in this case, is not damage to the roof or any roofing components or materials, but was the result of improper construction and improper use of materials in that construction. The bargers, once we prove that at the summary... And I just want to be clear, this is construction that happened after the storm event? No, Your Honor, this is before. This was construction before the storm event. You're saying they had a roof that was defective? Yes, Your Honor. But it didn't start leaking until the storm event? The bargers didn't notice any leaking before the storm. According to Mr. Shaheed... They had a great roof, right? Before the storm, not leaking, and then after the storm it starts leaking but somehow that's because of some pre-existing construction defect. What an amazing coincidence. That's correct, Your Honor. It's not a coincidence. That is the nature of the scientific evaluation that our expert performed when he inspected the roof. He found that there was no evidence of any damage to the roof system from hail, wind, or any other act except that the roof was designed improperly and materials were installed improperly, which once this historic rain event occurred, allowed water to enter the interior of the home instead of being absorbed... It did what a roof was supposed to do before the storm, but then after the storm, it didn't do what a roof was supposed to do. No, Your Honor. The evidence in the records from Mr. Shaheed shows that before the storm, there was evidence of leaking, but the leaking wasn't so bad as to cause the bargers to notice it because the water was being absorbed through those incidental building materials that were between their ceiling and their roof materials, so the insulation, the felt membrane, the underlayment, those things, and actually the wood decking, those things were absorbing the water that was already penetrating that improperly designed and defective roof. It just wasn't sufficient to cause interior damage that the bargers were noticing. That only occurred after this June 2021 storm event. And if there was improper construction, it would be excluded? Correct. But you didn't raise the exclusion to the district court, and now you want to avoid a jury trial by raising it for the first time here? I disagree that we did not raise it before the district court. I have it in front of me, so give me a record citation. I'm looking at your memorandum in support of your motion for summary judgment. I'm ready when you are for the page number. I don't have that page number. I don't think it exists. I've got it in front of me. I can't find it. Your Honor, we included the record citations in our briefing to those things, I believe. 2519, 1561, that's a foster affidavit. 1703 to 1706, again, foster affidavit. You've generated thousands of pages of expert reports to avoid paying for a $16,000 roof. It's an incredible, it really is an amazing litigation judgment. But I don't understand how you raised it to the district court. Your Honor, even if we didn't specifically say, you know, loss is not assured, exclusion 3A, B, C, applies here to preclude coverage. The district court can, looking at the record as a whole, identify whether we're entitled to summary judgment and grant summary judgment on a basis that's not raised by us. You generated a 3,000-page record, and your theory is that the district judge, we've said this over and over again. In fact, I think I've actually written in an opinion that judges, you know, aren't pigs hunting for truffles in a record. But your thought is that, like, if it's somewhere in this 400-page foster affidavit, that the district court can go through there and figure out a basis to deny these people a new roof? Well, I think the reality is that the district judge did that. Using the wrong provision of the policy. Isn't it incredible? I understand that there was an error. I don't know, I can't explain why that language was typed in that opinion as opposed to the coverage A language. But the district judge clearly found that all of those defects that Shaheed identified in his report resulted from latent construction defects which are excluded by the policy. You know, the district judge can I have a site here for you. In Liberty Mutual Fire v. Copart, this court says, that the district judge is free to grant summary judgment on the basis of any facts shown by competent evidence in the record. And I think that's what happened here, Your Honor. So this court, similarly, can affirm on any basis even one not cited by the district judge. So here, the only competent evidence in the record as to either the extent of the damage, the cause of the damage, or the cost to repair the damage to the barger's roof is that provided by State Farm. The bargers, as lay witnesses, are not competent to provide testimony concerning those facts, and they don't have any experts. And at the end of the day, there's really not anything that they can say that is contrary to that. And as a result, they lack the ability to prove the essential element of their case, which is that they're entitled to one penny more than what State Farm has already paid them under their insurance contract. And I appreciate your point about the $16,000. I do. What's your evaluation of the case? Can you tell me? Is that privileged? I don't want to ask you for attorney-client privilege information. No, I understand. I appreciate that. Prior to this oral argument, counsel for the bargers submitted a letter to us stating that their attorney fee claim alone was in excess of $200,000. So, you know, if we are incorrect on our contract position, and the court or the trier of fact, the jury, at some point, finds that we breached the contract, we would be arguably on the hook for $16,000 less, whatever we have paid to date, plus potentially $200,000 plus ongoing for attorney's fees if the court determines that there was some conduct by State Farm that would entitle the bargers to extra-contractual damages. And then if the bargers could get over their burden to prove that we had no arguable reason for the position that we took, potentially punitive damages as well. I mean, it's interesting. This case was filed by the bargers in Mississippi State Court. Yes. I looked at your notice of removal. So you brought it to federal court. We've now been litigating for how long? Two years. Two years. Hundreds of thousands of dollars of fees, tens of thousands, presumably just to be here today, over a $16,000 roof and a legal proposition that is by definition one of state law. We can't bind the Mississippi State Courts to whatever we think the state law provision is, right? So this is just a pure eerie guess in federal court, over a $16,000 roof. And as a consequence, the parties have spent hundreds of thousands of dollars and years litigating that because of the removal to federal court. It's interesting. I agree, Your Honor. I mean, it's unfortunate that the plaintiffs pled the case the way that they did. We had an entitlement to remove it, and that's what we did. The plaintiffs are out $16,000, right? And that's why they filed in state court, not in federal court, right? Their original claim, $16,000 and then some unspecified amount for this other stuff and bad faith and whatever, right? I mean, but we're here because of your decisions, not theirs. Well, we're here because they pleaded an entitlement to punitive and extra contractual damages, which often, as you know, in Mississippi is an extraordinary amount. So that's why the case was removed. Are there any other questions? How old is the house? The original portion of the house I believe was built in the mid-1900s. The house has been added on to several different times. But the roof, it doesn't work properly. 2011, yes, Your Honor. And they didn't notice any leak until what year? The Bargers did not purchase the home until 2014, I believe is their testimony, and they did not notice any leaks. According to their testimony, they were not aware of any leaking events until this storm event in 2021. So six years they didn't notice any leaks with that defective roof. That's correct. All right. Thank you, Counsel. Thank you, Your Honor. I will be very brief. There was questions about the construction. Allen Barger designed a new roof. He changed the roof lines. And the proof is the Bargers had owned the house about a total of 10 years. And during their ownership, on one occasion, they had a leak. And Allen, who's a handyman, prepared, fixed it. It was around some flashing on one of the flat areas. So that is in the Bargers when it's part of our after, when I first got involved, we got the estimate from Platinum Roofing that was recommended to Allen Barger by his agent, Hart Kittle. So that's how that got involved. But given the circumstances that they had with the roof, and Allen decided to reconstruct the roof lines, and the proof is undisputed, it's over like $40,000 that he incurred making repairs to the roof, which these repairs would be betterment, and we wouldn't have been asking them to pay. But we have replacement cost coverage. And in order to get replacement cost coverage, you've got to replace the roof, which needed being replaced, given the fact that it's leaking in seven separate and distinct places. And the only thing about an expert or about the $16,000 roof is we sent that to State Farm. I sent it in the letter saying, if you have an issue with this, because that's at the time we're talking about, we want to comply with our obligations to get replacement cost coverage, so we follow the rules. No one from State Farm ever confronted that, and its only relationship to this case is we did not want to be asked, standing in front of a jury, asking for $40,000 because we made improvements in betterments of our roof. So that's why we're here. And I think it is just as clear as a bell. When Allen testified about his conversations with Mr. Kaye, he was told, roofs like this are going to leak. Roofs like this being and luckily for us, Mr. Foster's claims notes were there, and he told the agent, or he sent an email to someone, or he made his notes in the claim that y'all have seen the quote, I'm sure. Roofs like this are going to leak because it has multiple facets, et cetera. Well, Ally's repair did not eliminate the multiple facets, but in the one section that Allen inspected in this part of the record, photographs were taken to show the two areas of 15-pound filth. The guy initially was saying we didn't have an ice and water shield, but he changed that opinion. He issued four or five different reports, but the bottom line is Allen was told a roof like that's going to leak, and that's exactly what the claims manager said, and that's why we filed the lawsuit. Any other questions, Judge? None. Thank you. Thank you, Counsel. All right. We'll take the matter under advice. Call the next case.